**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **JAKROI ALLEN BANKS,** | § | |
| **TDCJ No. 02227062,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **CIVIL NO. SA-21-CA-0656-JKP** |
| | § | |
| **BOBBY LUMPKIN, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Petitioner Jakroi Allen Banks's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1), Petitioner's Supplemental Memorandum in Support (ECF No. 2), Respondent Bobby Lumpkin's Answer (ECF No. 14), and Petitioner's Reply (ECF No. 23). In his petition and supplemental memorandum, Petitioner challenges the constitutionality of his 2018 state court conviction for aggravated kidnapping. Also before the Court are Petitioner's Supplemental Petition (ECF No. 10), Respondent's Amended Answer (ECF No. 28), and Petitioner's Reply (ECF No. 29) thereto.

Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner is not entitled to relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d). Petitioner is also denied a certificate of appealability.

## I. **Background**

In June 2018, Petitioner plead guilty to one count of aggravated kidnapping in exchange for the State's waiver of three additional counts of aggravated sexual assault. (ECF Nos. 15-1 at

4-5 (plea hearing); 15-24 at 73-81 (plea agreement)).  Following a separate punishment hearing, the trial court sentenced Petitioner to thirty years of imprisonment.  *State v. Banks*, No. 2017CR0571 (175th Dist. Ct., Bexar Cnty., Tex. Oct. 10, 2018); (ECF Nos. 15-3 at 13 (sentencing hearing); 15-25 at 7-8 (Judgment)).  The Texas Fourth Court of Appeals later dismissed Petitioner's direct appeal because he waived the right to appeal as part of the plea bargain agreement.  *Banks v. State*, No. 04-18-00908-CR, 2018 WL 6624371 (Tex. App.—San Antonio, Dec. 19, 2018).  Petitioner did not file a petition for discretionary review with the Texas Court of Criminal Appeals.  (ECF No. 14-1).[1]

Instead, Petitioner challenged the constitutionality of his conviction by filing an application for state habeas corpus relief.  *Ex parte Banks*, No. 91,607-02 (Tex. Crim. App.); (ECF No. 15-24 at 5-24).  The Texas Court of Criminal Appeals eventually denied the application without written order on March 17, 2021.  (ECF No. 15-6).  Three months later, Petitioner initiated the instant proceedings by filing a petition for federal habeas relief raising ten grounds for relief, which he later supplemented with one an additional allegation.  (ECF Nos. 1, 2, and 10).

## II.  Petitioner's Allegations

In his original federal petition (ECF No. 1) and supplement (ECF No. 10), Petitioner set forth the following claims for relief:

1.  Circumstances exist that rendered the Texas habeas corpus process ineffective in protecting his rights;

2.  The state court's adjudication resulted in a decision based on an unreasonable determination of the facts;

---

[1]      *See also* http://www.research.txcourts.gov, search for "Banks, Jakroi" last visited January 12, 2024.

3.      Petitioner's guilty plea was unknowing and involuntary;

4.      Petitioner's guilty plea was unknowing and involuntary due to ineffective assistance of counsel;[2]

5.      Trial counsel provided ineffective assistance by failing to litigate a Fourth Amendment issue;

6.      Trial counsel had a conflict of interest with Petitioner, withdrew as counsel, and coerced Petitioner to plead guilty;

7.      There was insufficient evidence to support his conviction for aggravated kidnapping;

8.      He was denied effective assistance of counsel by his second attorney's failure to present mitigating evidence at the sentencing hearing;

9.      The trial court abused its discretion by denying Petitioner's motion to withdraw his guilty plea;

10.     He was denied due process because he involuntarily waived his right to appeal without knowing the consequences of the waiver; and

11.     He was denied the right to counsel at his arraignment under Article 15.17 of the Texas Code of Criminal Procedure.

### III.  **Standard of Review**

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA.  28 U.S.C.A. § 2254.  Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was

---

[2]      Specifically, Petitioner faults counsel for: (a) advising him that he could request community supervision from the trial court, (b) not fully advising him of terms of the plea agreement, (c) not advising him on the applicable law concerning aggravated kidnapping, (d) failing to conduct an investigation, (e) failing to have him examined by a psychologist prior to the plea hearing, and (f) assuring him he would receive deferred adjudication from the trial court.

based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *Brown v. Payton*, 544 U.S. 133, 141 (2005).  This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003).  Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself. *Richter*, 562 U.S. at 102.  Instead, a petitioner must show that the decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

So long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

## IV.  Analysis

**A.**     **Petitioner's State Habeas Proceeding (Claims 1, 2).**

Petitioner first challenges the Texas Court of Criminal Appeals' denial of his state habeas application without a written order, arguing that the state court's refusal to hold an evidentiary hearing or abide by the guidelines set forth by the Texas Code of Criminal Procedure and Texas Rules of Appellate Procedure violated his due process rights.  Petitioner also argues that the state court's decision was based on erroneous findings made by the trial court that were inconsistent with the evidence.  Such claims do not entitle Petitioner to relief because alleged errors or irregularities occurring in state habeas proceedings do not raise cognizable claims for federal habeas relief.   *See Henderson v. Stephens*, 791 F.3d 567, 578 (5th Cir. 2015) ("infirmities in state habeas proceedings do not constitute grounds for federal habeas corpus relief"); *Ladd v. Stevens*, 748 F.3d 637, 644 (5th Cir. 2014) (same).  This is because an attack on the validity of a state habeas corpus proceeding does not impact the validity of the underlying state criminal conviction.  *See Rudd v. Johnson*, 256 F.3d 317, 319-20 (5th Cir. 2001) (reiterating that "an attack on the state habeas proceeding is an attack on a proceeding collateral to the detention and not the detention itself.") (citations omitted).  For this reason, Petitioner's complaints concerning his state habeas corpus proceeding do not furnish a basis for federal habeas corpus relief.

**B.**     **Voluntary Waiver (Claims 3, 5, 6, 7, 10, and 11)**

Pursuant to a plea bargain agreement, Petitioner judicially confessed to committing the offense of aggravated kidnapping, acknowledged the range of punishment for this first-degree offense, and waived his right to a jury trial and appeal in exchange for a sentencing cap of thirty years.  (ECF No. 15-24 at 73-81).  Petitioner now challenges the constitutionality of his guilty

5

plea by arguing that:  the plea was unknowing and involuntary (Claim 3); he was denied his right to effective counsel (Claims 5 and 6); the evidence was insufficient to support a conviction (Claim 7); he involuntarily waived his right to appeal (Claim 10); and he was denied his right to counsel at arraignment (Claim 11).

All of the above allegations—with the exception of Claim 11—were rejected by the state court during Petitioner's state habeas proceedings.  As discussed below, this adjudication was neither contrary to, nor an unreasonable application of, Supreme Court precedent.  *Richter*, 562 U.S. at 101.  Indeed, the record indicates that, despite his contention to the contrary, Petitioner voluntarily plead guilty to the conviction he is now challenging under § 2254.  Because his guilty plea was voluntary, Petitioner waived the right to challenge all non-jurisdictional defects in his proceedings.

1. Petitioner's Plea Was Voluntary

It is axiomatic that a guilty plea is valid only if entered voluntarily, knowingly, and intelligently, "with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005); *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000).  A plea is intelligently made when the defendant has "real notice of the true nature of the charge against him."  *Bousley v. United States*, 523 U.S. 614, 618 (1998) (internal quotation marks omitted).  And a plea is "voluntary" if it does not result from force, threats, improper promises, misrepresentations, or coercion.  *United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997).  The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to

the defendant. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985); *United States v. Juarez*, 672 F.3d 381, 385 (5th Cir. 2012).

The record in this case indicates Petitioner's plea was a voluntary and intelligent choice and not the result of any misrepresentation. To start, the voluntariness of Petitioner's plea is demonstrated by his signature on the "Court's Admonishment and Defendant's Waivers and Affidavit of Admonitions" and accompanying "Plea Bargain." (ECF No. 15-24 at 73-77). These documents indicate that the prosecution was only proceeding on one count of first-degree aggravated kidnapping, which had a maximum punishment range of five to ninety-nine years of imprisonment or life imprisonment. *Id*. However, Petitioner's sentence was to be capped at thirty years maximum, he would not be eligible for community supervision, and the State opposed any request for deferred adjudication. *Id*. Petitioner also waived his right to appeal as part of the plea agreement. *Id*. at 77.

In addition, Petitioner made the following concessions in his plea agreement:

1.  I have had my Constitutional and legal rights explained to me by my attorney, and have decided to waive my Constitutional right of trial by jury and enter this plea before the judge. I hereby request the consent and approval of the State's Attorney and of the Court to my waiver of trial by jury. I further represent to the Court as follows:

2.  I am mentally competent now and was legally sane at the time that this offense was committed.

3.  I have not been threatened, coerced or placed in fear by any person to induce me to enter my plea.

4.  If I have a plea bargain agreement with the prosecutor, its terms are fully set forth in the attached document. I have received no promise from the prosecutor, my attorney or the Court which are not set forth in that document, and I realize that no one else would be empowered to make me any promises.

5.     If I am pleading GUILTY, it is because I am guilty, and for no other reason.  If my plea is one of NOLO CONTENDERE, it is because I have considered all aspects of my legal situation and discussed them with my attorney and have determined that the entry of such plea is in my own best interest.

6.     If applicable, my attorney has explained to me the requirements and consequences of Chapter 62 of the Texas Code Of Criminal Procedure Sex Offender Registration Program.

7.     I understand the Courts admonishments as contained in this waiver.

8.     I am satisfied with the advice and representation of my attorney in this case.

*Id*. at 75.  Petitioner's trial counsel signed the agreement after concluding that Petitioner had a rational and factual understanding of the pending charges against him and the rights he was waiving, and the trial court approved the agreement by stating Petitioner was mentally competent and his waiver was knowing, intelligent, and voluntary.  *Id*. at 76.

Furthermore, Petitioner signed a "Waiver, Consent to Stipulation of Testimony and Stipulations" wherein Petitioner stated he knowingly and voluntarily agreed to waive his rights to confrontation and cross-examination of witnesses and admitted that the allegations contained in the indictment are true and correct.  *Id*. at 78-81.  Counsel for Petitioner again signed the waiver, stating that he discussed with Petitioner the rights he was waiving and indicating his belief that Petitioner "fully understands these rights and has intelligently and voluntarily waived these rights and entered into these agreements after due deliberation[.]"  *Id*. at 81.  The trial judge then gave his approval of the waiver, concluding:

The Defendant having signed the Waiver, Consent to Stipulation of Testimony and Stipulations in open Court and under oath, the Court questioned both the Defendant and his Counsel and thereby became satisfied that the

> Defendant understands the rights which have been waived and therefore can be truly said to have voluntarily relinquished known rights.  The Waiver, Consent to Stipulation of Testimony and Stipulations are approved and ORDERED filed in the papers of the cause.

*Id*.

Finally, the voluntariness of Petitioner's plea is demonstrated by Petitioner's appearance before the trial court.  (ECF No. 15-1).  Petitioner was again admonished of the offense he was charged with and the applicable punishment range and stated on the record that he understood both.  *Id*. at 6.  Petitioner also indicated that he discussed his rights and the plea agreement with his attorney and that he was satisfied with his counsel's representation.  *Id*. at 6-7.  Petitioner stated that he understood that he was waiving his right to appeal.  *Id*. at 8.  The trial court explained the pros and cons of applying for deferred adjudication and that the State opposed Petitioner's application for deferred adjudication, to which Petitioner indicated his understanding.  *Id*. at 10-11.  He also indicated that he had not been threatened or coerced into entering the plea agreement.  *Id*. at 12-13.  Both counsel and the trial court confirmed that Petitioner was competent and understood the plea agreement.  *Id*. at 11-12.

Petitioner's formal declarations in open court carry "a strong presumption of verity" and constitute a formidable barrier to any subsequent collateral attack.  *United States v. Kayode*, 777 F.3d 719, 729 (5th Cir. 2014) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).  Petitioner's signature on the guilty plea documents is also *prima facie* proof of the validity of the pleas and is entitled to "great evidentiary weight."  *Theriot v. Whitley*, 18 F.3d 311, 314 (5th Cir. 1994); *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (citing *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985)).  Because Petitioner has not provided any evidence or argument that would overcome these "strong presumptions of verity," this Court denies any allegation

made by Petitioner—in particular, Claims 3 and 10—concerning the validity of his guilty plea. *Blackledge*, 431 U.S. at 74 (finding "[t]he subsequent presentation of conclusory allegations which are unsupported by specifics is subject to summary dismissal.").

    2.   <u>Claims Waived by the Guilty Plea</u>

By entering a knowing, intelligent, and voluntary guilty plea, a defendant waives all non-jurisdictional defects preceding the plea. *Tollett v. Henderson*, 411 U.S. 258, 265 (1973); *United States v. Scruggs*, 714 F.3d 258, 261-62 (5th Cir. 2013). This rule encompasses errors of constitutional dimension that do not affect the voluntariness of the plea, such as Petitioner's claims of insufficient evidence (Claim 7) and trial court error (Claim 11). *United States v. Broce*, 488 U.S. 563, 573-74 (1989); *United States v. Hanyard*, 762 F.2d 1226, 1229-30 (5th Cir. 1985) (waiving claim regarding sufficiency of the evidence). The rule also includes ineffective-assistance-of-counsel (IAC) claims unless the alleged ineffectiveness relates to the voluntariness of the guilty plea. *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000) (waiving claims of ineffective assistance, except for claims related to voluntariness of plea); *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983) (same). As such, the only claims that survive a guilty plea are those implicating the validity of the plea itself. *Tollett*, 411 U.S. at 267; *Glinsey*, 209 F.3d at 392.

Here, Petitioner claims that his conviction was unconstitutional because there was insufficient evidence to support a conviction (Claim 7) and he was denied his right to counsel at arraignment (Claim 11). He also faults his trial counsel for failing to litigate a Fourth Amendment issue pre-trial (Claim 5) and for harboring a conflict of interest when Petitioner sought to withdraw his guilty plea (Claim 6). But Petitioner fails to provide any relevant

argument that such claims are jurisdictional, much less demonstrate how the alleged violations somehow relate to the voluntariness of his guilty plea.   Accordingly, Petitioner's claims are waived by his knowing, voluntary, and intelligent guilty plea.

**C.**     **The Remaining IAC Claims (Claims 4, 8)**

Petitioner does make certain allegations concerning his trial counsel's performance that, if successful, may implicate the voluntariness of his guilty plea.   Specifically, concerning his original attorney, Hubert Todd McCray, Petitioner contends that counsel:  (a) advised him that he could request community supervision from the trial court,  (b) did not fully advise him of terms of the plea agreement, (c) did not advise him on the applicable law concerning aggravated kidnapping, (d) failed to conduct an investigation, (e) failed to have him examined by a psychologist prior to the plea hearing, and (f) assured him he would receive deferred adjudication from the trial court.   Petitioner also contends that his second attorney, Cornelius Cox, who represented Petitioner at his sentencing hearing, failed to investigate or present mitigating evidence on his behalf.

As discussed below, assuming the claims were not waived by the guilty plea, federal habeas relief is still unwarranted.

1.     The *Strickland* Standard

Sixth Amendment claims concerning the alleged ineffective assistance of trial counsel are reviewed under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates both that (1) counsel's performance was deficient, and (2) this deficiency prejudiced his defense.  466 U.S. at 687-88, 690.  According to the Supreme Court,

11

"[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

To establish counsel's performance was deficient, a petitioner must first show his counsel's performance fell below "an objective standard of reasonableness." *Id*. at 688-89. When determining whether counsel performed deficiently, courts must be highly deferential to counsel's conduct, and counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Burt v. Titlow*, 571 U.S. 12, 22 (2013) (quoting *Strickland*, 466 U.S. at 690).

To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. But, in the context of a guilty plea, proving *Strickland*'s prejudice requirement turns "on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S at 59. This means, "in a guilty plea scenario, a petitioner must prove not only that his attorney actually erred, but also that he would not have pled guilty but for the error" and, instead, "would have insisted upon going to trial." *Armstead v. Scott*, 37 F.3d at 206 (citations omitted). This assessment will turn partially on "a prediction of what the outcome of a trial might have been." *Id*.

2.     Counsel's Advice (Claims 4(a)-(c), (f))

In several allegations, Petitioner contends that his guilty plea was unknowing and involuntary because he was misled by his trial counsel, Hubert Todd McCray. According to Petitioner, McCray did not fully advise him of the terms of the plea agreement, improperly advised him that he could request community supervision from the trial court, coerced him to

plead guilty by assuring him that he would receive deferred adjudication, and failed to advise him on the applicable law regarding aggravated kidnapping.  As noted by the State habeas trial court during Petitioner's state habeas proceedings, however, such allegations are contradicted by the record in this case.

To start, as discussed in Section IV(B)(1), *supra*, the plea bargain agreement signed by Petitioner demonstrated his awareness of the "relevant circumstances and likely consequences" of his plea.  *Bradshaw*, 545 U.S. at 183.  The plea agreement states Petitioner understood the terms of the plea agreement, that counsel explained the legal effects of the agreement, that he was satisfied with counsel's advice, and he was not coerced or misled into making the plea. (ECF No. 15-24 at 73-81).  The plea bargain also explicitly states that Petitioner was not eligible for community supervision and that the State would oppose any request by Petitioner to receive deferred adjudication.[3]  *Id*. at 77.

Further, Petitioner testified in open court that he fully understood the terms of the plea agreement.  (ECF No. 15-1).  Petitioner was advised of his rights and the range of punishment he was facing on the aggravated kidnapping charge.  *Id*. at 6.  He again indicated that he understood the terms of the plea agreement, that counsel explained the legal effects of the agreement, and he was not coerced or misled into making the plea.  *Id*. at 6-7, 9, 11-13.  Petitioner even acknowledged his understanding that he would not be eligible for community supervision under the plea agreement and that the State opposed his request for deferred adjudication.  *Id*. at 8-9. Thus, the record in this case demonstrates on numerous occasions that Petitioner was well-aware

---

[3]      Petitioner is unable to point to anything in the record to support his assertion that counsel "assured" Petitioner he would receive deferred adjudication.  (ECF No. 1 at 11).  Such a conclusory and unsupported allegation of counsel's misrepresentations is not enough to establish deficient performance under *Strickland*.  *See Miller v. Thaler*, 714 F.3d 897, 903 (5th Cir. 2013); *United States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007).

of the terms of his plea agreement, including his ineligibility for community supervision and the State's opposition to deferred-adjudication probation.

Finally, the record is equally dispositive of Petitioner's claim that counsel failed to advise him on the applicable law regarding aggravated kidnapping. Petitioner argues that counsel did not advise him that the prosecution had the burden to prove two distinct elements of aggravated kidnapping—(1) restraint with the intent to prevent liberation, and (2) the confinement was made with the intent to inflict bodily injury. (ECF No. 2 at 35). Although such elements are clearly laid out in the indictment obtained against Petitioner (ECF No. 15-24 at 69), both McCray and another local attorney contacted by Petitioner spent several hours with Petitioner reviewing the law regarding aggravated kidnapping, the evidence against Petitioner, and the plea agreement. (ECF Nos. 15-8 at 70 (affidavit of Junius Hicks, Jr.); 15-25 at 28 (affidavit of Hubert McCray)). Petitioner thus fails to establish that his guilty plea was involuntary due to any alleged deficiencies in counsel's performance.

Regardless, even assuming counsel was deficient, Petitioner still cannot show he would not have accepted the current plea and would have instead insisted on going to trial but for counsel's errors. *Armstead*, 37 F.3d at 206. Again, such an assessment will turn partially on "a prediction of what the outcome of a trial might have been." *Id*. The record is silent as to whether Petitioner would have made the decision to plead not guilty and go to trial had counsel further advised him on the applicable law and the terms of the plea agreement. In signing the waiver and stipulations of the trial court, however, the record does indicate that counsel fully explained his rights and the plea agreement to Petitioner, that Petitioner understood he was charged with an enhanced first-degree felony with the possibility of a life sentence, and that

Petitioner admitted to committing the charged offense.  Thus, based on the record before the Court, it appears unlikely Petitioner would have chosen to go to trial.

In light of the record evidence supporting the voluntariness of his guilty plea, in addition to the fact that Petitioner failed to prove counsel's performance was deficient or his plea was involuntary due to ineffective assistance of counsel, this Court must find Petitioner entered into his plea voluntarily, knowingly, and intelligently.  Moreover, Petitioner completely failed to prove that, but for his attorney's actions, he would have chosen to proceed to trial.  Petitioner has therefore failed to establish a valid IAC claim.  *Hill*, 474 U.S. at 58.  Consequently, given the deference afforded to state court determinations on federal habeas review, relief is denied. *Richter*, 562 U.S. at 103.

### 3.   Counsel's Investigation (Claim 4(d))

Petitioner next asserts that his trial counsel rendered ineffective assistance by failing to conduct an adequate investigation prior to his pleading guilty.[4]  According to Petitioner, neither counsel nor his investigator conducted any investigation of the crime scene, interviewed witnesses, or conducted a background investigation of the complaining witness.  (ECF No. 2 at 33).  Petitioner raised these allegations during his state habeas proceedings.  In response, trial counsel submitted an affidavit wherein he indirectly addressed the extent of his investigation:

> On May 31, 2018, Counsel [met] with [Petitioner] and Mr. Hicks in Counsel's law office for several hours and reviewed the plea bargain agreement, the law of Aggravated Kidnapping and specifically evidence of kidnapping.

---

[4]      As previously noted, a valid guilty plea waives all non-jurisdictional defects—including an IAC claim—unless the IAC claim goes to the voluntariness of the plea.  *Smith*, 711 F.2d at 682.  But the Fifth Circuit has sometimes treated allegations of counsel's failure to investigate as a challenge to the validity of a guilty plea. *See, e.g., United States v. Shepherd*, 880 F.3d 734, 741-46 (5th Cir. 2018) (finding counsel's failure to investigate exculpatory evidence affected voluntariness of plea).  Thus, the Court considers Petitioner's IAC claim to the extent it may implicate the voluntariness of his plea.  *Hill*, 474 U.S. at 56 (citing *Tollett*, 411 U.S. at 267).

<u>Exhibit B</u>.   Mr. Hicks and [Petitioner] with Counsel reviewed the specific videotaped evidence of kidnapping, the police reports, witness statement, hospital medical records and SANE examination reports documenting complainant's injuries.

(ECF No. 15-25 at 28).

The state habeas trial court found trial counsel's affidavit to be credible and concluded that counsel "thoroughly investigated the facts of this case, the State's evidence, and all possible defenses" and that counsel's representation "was within the range of competence demanded of attorneys in criminal cases." *Id*. at 62, 65.  These findings and conclusions were adopted by the Texas Court of Criminal Appeals when it denied Petitioner's state habeas application.  (ECF No. 15-6).  These determinations, including the trial court's credibility findings, are entitled to a presumption of correctness unless they lack fair support in the record.  *Demosthenes v. Baal*, 495 U.S. 731, 735 (1990); *Miller v. Thaler*, 714 F.3d 897, 903 (5th Cir. 2013).

Petitioner fails to show that the state court's ruling on trial counsel's performance was contrary to, or involved an unreasonable application of *Strickland* or that it was an unreasonable determination of the facts based on the evidence in the record.  *Strickland* requires counsel to undertake a reasonable investigation.  466 U.S. at 690-91; *Charles v. Stephens*, 736 F.3d 380, 389 (5th Cir. 2013).  Counsel must, at minimum, interview potential witnesses and make an independent investigation of the facts and circumstances of the case.  *Kately v. Cain*, 704 F.3d 356, 361 (5th Cir. 2013).  But in assessing the reasonableness of counsel's investigation, a heavy measure of deference is applied to counsel's judgments.  *Strickland*, 466 U.S. at 691.  A petitioner alleging that an investigation is deficient must show what the investigation would have uncovered and how the petitioner's defense would have benefited from this information.  *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993).

16

In this case, trial counsel's affidavit demonstrated that a considerable amount of evidence was already in the defense's possession, including police reports, a witness statement, medical records, and videotaped evidence of the crime itself.  (ECF No. 15-25 at 28).  This is confirmed by counsel's letter to Petitioner dated August 13, 2018, where counsel reiterated that he reviewed with Petitioner "the entire file including police reports, search and arrest warrants, medical reports, witness statement, prosecution guide and presentence investigation report."   (ECF No. 15-7 at 101).  The extent of counsel's investigation is further demonstrated by an affidavit from Andrew Watson, the private investigator appointed to assist counsel:

> At Mr. McCray's request I reviewed the prosecution guide, police reports and witness statements in this case and investigated the background of the complainant . . . for potential criminal history and evidence of false reports of sexual assault.  My investigation into [the complainant]'s character did not reveal any criminal history or evidence of false reports.

(ECF No. 15-8 at 71).  Thus, the record supports the state habeas court's conclusion that counsel "thoroughly investigated the facts of this case, the State's evidence, and all possible defenses." (ECF No. 15-25 at 62).

Moreover, Petitioner has not alleged with any specificity what further investigation would have revealed or how it would have altered the outcome of the trial.  *Druery v. Thaler*, 647 F.3d 535, 541 (5th Cir. 2011).  While Petitioner argues that counsel did not investigate the crime scene or interview witnesses, he fails to explain what (or who) counsel could have uncovered that would have benefitted the defense.   As a result, petitioner's conclusory allegations are insufficient to raise cognizable claims of ineffective assistance of counsel. *Demik*, 489 F.3d at 646; *Miller*, 200 F.3d at 282.  Consequently, given the deference afforded to state court determinations on federal habeas review, relief is denied.  *Richter*, 562 U.S. at 103.

17

4.     Petitioner's Mental Health (Claim 4(e))

In a related allegation, Petitioner also faults counsel for failing to have Petitioner examined by a psychologist prior to pleading guilty.  Petitioner contends that an examination of his mental health at the time of the crime—in particular, his sanity—was necessary before counsel could advise him regarding the plea deal.  Similar to the previous claim, Petitioner's allegation was rebutted by the affidavit filed by trial counsel, Hubert McCray, during Petitioner's state habeas proceedings:

> Response: On [Petitioner]'s behalf Counsel filed a Motion to Examine Defendant for Mental Illness, Competency and Sanity and an Ex parte Motion to Appoint Psychologist to [Assist] in the Evaluation, Preparation and Presentation of Defenses.  (C.R. pgs. 91-105, 106-108).  A hearing was held in Magistrate Court before Criminal District Court Magistrate Andrew Carruthers.  (C.R. pg. 109). [Petitioner] was present in court during the hearings.  Before the hearing Counsel explained to [Petitioner] the competency evaluation process and the findings of the Court following the hearing.  Judge Carruthers granted the Motion for Competency Evaluation but held the motion for Sanity Evaluation in abeyance pending the outcome of the competency evaluation.  Dr. Michael T. Jumes conducted a Competency Evaluation of [Petitioner] and filed a report with the Court dated February 20, 2018.  See Exhibits in [Petitioner]'s Application for Writ. The results of Dr. Jumes report were that [Petitioner] was competent to stand trial and Judge Carruthers based upon the report found [Petitioner] to be competent.  (C.R. pg. 109).
>
> Dr. Jumes reported that [Petitioner] had previously been diagnosed with PTSD and a substance use disorder.  There was no evidence in Dr. Jumes report of a severe mental illness or mental defect that may have reasonably raised a sanity defense.  [Petitioner]'s description of the facts with Counsel as well [as] review of the police reports, witness statements and video evidence did not reasonably raise a sanity defense.  Based upon conversations with Counsel [Petitioner] understood that a Court ordered sanity evaluation would require [Petitioner] to discuss specific facts with Dr. Jumes and that those statements would be available to the prosecutors and could be used against him at trial.  [Petitioner] and Counsel agreed that further mental evaluation should be conducted by an appointed Defense Expert which would be confidential unless the defense expert was called as a witness.  (C.R. pg. 153- 156).  At Counsel's request the court appointed Dr. John Fabian, a Board Certified Forensic and Clinical Psychologist and Forensic and Clinical Neuropsychologist, to assist Counsel in evaluating [Petitioner]'s

mental state.   Dr. Fabian conducted a clinical evaluation of [Petitioner] and determined that [Petitioner]'s "mental health conditions did not in any way rise to the level of a psychiatric defense."   Exhibit A.

(ECF No. 15-25 at 23-24).

The state habeas trial court found trial counsel's affidavit to be credible and concluded that counsel "adequately investigated the issue of [Petitioner]'s competency and mental health[.]"   *Id*. at 61.   The Texas Court of Criminal Appeals adopted these findings and conclusions when it denied Petitioner's state habeas application.  (ECF No. 15-6).

Petitioner fails to demonstrate that the state court's denial of this claim was an unreasonable application of *Strickland*.   Again, *Strickland* requires counsel to undertake a reasonable investigation, with a heavy measure of deference applied to counsel's judgments. 466 U.S. at 690-91.   In this case, the record clearly contradicts Petitioner's assertion that no investigation of his mental health at the time of the crime occurred.   Indeed, as counsel attested, Petitioner's mental health was evaluated by *two* mental health experts—Dr. Jumes and Dr. Fabian.  (ECF No. 15-25 at 23-24).   Neither expert found mental health issues that could have supported an insanity defense.  *Id*.; *see also* ECF Nos. 15-7 at 103-07 (Dr. Jumes report), 15-8 at 68-69 (Dr. Fabian's letter to counsel).

Petitioner has not pointed to any credible evidence rebutting counsel's assertions concerning his investigation, much less demonstrated that state court's ruling on trial counsel's investigation and strategy "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.   Accordingly, federal habeas relief must be denied because Petitioner fails to meet his burden of proof under the AEDPA.  28 U.S.C. § 2254(d).

5.      Punishment Phase (Claim 8)

In his last IAC claim, Petitioner contends that he was denied effective counsel at the punishment phase of trial.  Specifically, Petitioner argues that his first attorney, Hubert McCray, failed to share his case file with Petitioner's punishment phase counsel, Cornelius Cox, which prevented Cox from presenting certain mitigating witnesses on his behalf.  He also faults McCray for preventing Dr. Fabian from creating a report that could have been used as mitigating evidence.  Neither allegation warrants federal habeas relief.

To start, Petitioner's allegation that McCray withheld his case file from Cox is conclusory, speculative, and unsupported by any evidence or facts.  Such conclusory allegations do not state a claim for federal habeas corpus relief and are subject to summary dismissal.  *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (holding "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding"); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (same).  The claim is also undermined by the findings of the state habeas trial court, which concluded that Cox had "extensive interviews" with both McCray and Petitioner, had a month and a half to investigate and prepare for sentencing, and "conducted a full investigation of the facts and circumstances of this case in preparation for sentencing."  (ECF No. 15-25 at 63).  Petitioner has pointed to no credible evidence rebutting these conclusions, much less to evidence that McCray withheld his file from Cox.

Furthermore, Petitioner has not alleged with any specificity what mitigating evidence was contained in McCray's file or how it would have altered the outcome of the trial.  *Druery v. Thaler*, 647 F.3d 535, 541 (5th Cir. 2011).  Complaints of uncalled witnesses are not favored on habeas review because the presentation of testimonial evidence is a matter of trial strategy and

because allegations of what a witness would have testified are largely speculative. *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). To prevail on an IAC claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate the witness was available to testify, delineate the content of the witness's proposed testimony, and show the testimony would have been favorable to the defense. *Id*. Petitioner has not even attempted to make this showing. Thus, Petitioner's conclusory assertions regarding potential mitigating witnesses are insufficient to support an IAC claim. *Woodfox v. Cain*, 609 F.3d 774, 809 n.17 (5th Cir. 2010); *Day*, 566 F.3d at 540.

Finally, Petitioner's argument that McCray prejudiced his sentencing proceeding by preventing Dr. Fabian from creating a sentencing report is similarly unpersuasive. Petitioner appears to believe that such a report could have been helpful as evidence to present at his sentencing proceeding. This notion is rebutted by McCray's affidavit filed during Petitioner's state habeas proceedings:

> Response: At Counsel's request Dr. Fabian conducted a clinical evaluation of [Petitioner] for purposes of mitigation at sentencing. Exhibit A. After Dr. Fabian's clinical evaluation [Petitioner] directed Counsel to file a Motion to Withdraw Plea and Request for a Jury Trial. (C.R. pg. 157-159). Counsel summarized Dr. Fabian's report status in a letter to [Petitioner] dated August 13, 2018. See Exhibits attached to [Petitioner]'s Application for Writ. Counsel advised Dr. Fabian that should the Court grant [Petitioner]'s Motion to Withdraw Plea a mitigation report for a plea sentencing hearing would be unnecessary. Dr. Fabian's findings were available pending a determination of how [Petitioner] and Counsel choose to best utilize his findings. Dr. Fabian was at all times available to report his findings on the clinical evaluation. Counsel shared with Mr. Cox Dr. Fabian's findings from [Petitioner]'s clinical evaluation which would have been unfavorable for sentencing. Exhibit A. Dr. Fabian was at all times available as a defense expert to provide assistance to defense counsel either for purpose of sentencing or trial.

(ECF No. 15-25 at 30).

The state habeas trial court found trial counsel's affidavit to be credible and concluded that "it would not be in [Petitioner]'s best interest to have a 'mitigation' report from [Dr. Fabian] due to the aggravating and risk factors that could be explored on cross examination." *Id*. at 62. The Texas Court of Criminal Appeals adopted these findings and conclusions when it denied Petitioner's state habeas application. (ECF No. 15-6).

Petitioner again fails to demonstrate that the state court's denial of his IAC claim was an unreasonable application of *Strickland*. In representing a client, counsel has "wide latitude" in determining what is in the client's best interest. *Yarborough v. Gentry*, 540 U.S. 1, 5-6, 8 (2003). For this reason, "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). In other words, given the broad discretion afforded to trial counsel, counsel's decisions on how best to proceed strategically are virtually unchallengeable. *Strickland*, 466 U.S. at 673.

Here, counsel explained that any sentencing report created by Dr. Fabian would likely have been unfavorable to Petitioner at sentencing. In a subsequent letter to counsel, Dr. Fabian corroborated counsel's explanation: "I recall that we decided it would not be in [Petitioner]'s best interest to have a mitigation type of report for court if I testified in mitigation as I would certainly be open to cross examination as to some of these aggravating and risk factors." (ECF No. 15-8 at 69). This decision was imminently reasonable given Dr. Fabian's opinion that there was a "sadistic component to [the] instant offense," there was at least a moderate risk of Petitioner reoffending, and there was likely more aggravating evidence than mitigating in this

case.  *Id*.  As a result, Petitioner has not shown counsel's performance was deficient or that the state court's denial of this claim was an unreasonable application of *Strickland*.

In sum, viewing all of Petitioner's IAC allegations under the deferential standard that applies on federal habeas review, Petitioner has not shown that the state court's decision was objectively unreasonable or that he is entitled to relief on his claims.  Federal habeas corpus relief is therefore denied.

**D.**     <u>**Trial Court Error**</u> **(Claim 9)**

Petitioner signed his plea agreement and entered a plea of guilty before the trial court on June 4, 2018.  (ECF Nos. 15-1, 15-25 at 73-81).  Almost three months later, just before his sentencing hearing was scheduled, Petitioner filed a motion to withdraw his jury waiver and plea of guilty.  (ECF No. 15-7 at 143-44).  On August 27, 2018, the trial court held a hearing on the motion and ultimately denied Petitioner's request to withdraw his plea.  (ECF No. 15-2).

Petitioner now contends that the trial court abused its discretion in denying Petitioner's motion to withdraw his guilty plea.  According to Petitioner, the trial court violated Article 26.13 of the Texas Code of Criminal Procedure by accepting Petitioner's guilty plea on June 4, 2018, without informing Petitioner in open court if it would follow or reject the agreement.  This allegation was raised during Petitioner's state habeas proceedings and rejected by the Texas Court of Criminal Appeals.  As discussed below, Petitioner fails to demonstrate the state court's rejection of this allegation was either contrary to, or an unreasonable application of, Supreme Court precedent.

1.      State Law Issue

Petitioner faults the trial court for failing to comply with Article 26.13 of the Texas Code of Criminal Procedure, which requires the trial court to "inform the defendant whether it will follow or reject the agreement in open court [] before any finding on the plea."  But even if the state trial court in fact misapplied state law, federal habeas corpus relief may only be granted to remedy violations of the Constitution and laws of the United States—not violations of state law. 28 U.S.C. § 2254; *Engle v. Isaac*, 456 U.S. 107, 119 (1983).  Because such claims are not cognizable in a federal habeas corpus proceeding, this Court must defer to the state-court determination of Texas law.  *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (stating that the Court has repeatedly held that "federal habeas corpus relief does not lie for errors of state law.") (citations omitted); *Fuller v. Johnson*, 158 F.3d 903, 908 (5th Cir. 1998) (failure to follow Texas law is not reviewable).

2.      No Error

Regardless, Petitioner has not demonstrated that the trial court erred when it denied Petitioner's motion to withdraw his guilty plea.  Importantly, a defendant has no absolute right to withdraw a guilty plea once it has been accepted.  *United States v. Glinsey,* 209 F.3d 386, 397 (5th Cir. 2000).  Under Texas law, this right ends once judgment has been pronounced or the case has been taken under advisement.  *Jackson v. State,* 590 S.W.2d 514, 515 (Tex. Crim. App. 1979).  A case has been "taken under advisement" when, once the trial court has admonished the accused and accepted his plea, the court passes the case for a presentence investigation report.  *See Crumpton v. State,* 179 S.W.3d 722, 724 (Tex. App.—Fort Worth 2005, pet. ref'd).  Thus, when a defendant decides to withdraw his guilty plea after the trial judge takes the case under

advisement, the withdrawal of such plea is within the sound discretion of the trial court. *Jackson,* 590 S.W.2d at 515.

Here, the record indicates that the trial court took Petitioner's plea agreement under advisement at the end of the June 4, 2018, hearing, following the court's admonishments:

| THE COURT: | All right.  Then I'll accept the plea of guilty, and ask the State to offer its proof. |
|---|---|
| MS. SCOTT: | State offers State's Exhibit No. 1 and its attachments. |
| MR. McCRAY: | Which I've reviewed in its entirety with [Petitioner], and we have no objections, Your Honor. |
| THE COURT: | All right.  They're admitted.  I'm going to find that the evidence is sufficient to support your plea of guilty.  And I'm not going to make any other findings at this time.  And I'll order a PSI.  When that's complete, you'll come back to court for sentencing. |

(ECF No. 15-1 at 13).  As such, the decision to allow Petitioner to withdraw his guilty plea at a later date was squarely within the trial court's discretion.  *Jackson,* 590 S.W.2d at 515.

Moreover, the above colloquy also demonstrates that the trial court did not abuse its discretion in later denying Petitioner's motion to withdraw the guilty plea.  At the plea hearing, once Petitioner received all of the statutorily-required admonishments, the trial court clearly informed Petitioner in open court that it would accept the plea agreement before finding that the evidence supported the guilty plea.  *Id*.  In other words, despite Petitioner's assertions to the contrary, no violation of Article 26.13 occurred.  As such, federal habeas corpus relief is unwarranted.

**E.**     **Exhaustion and Procedural Default** (Claim 11)

As discussed above, Petitioner raised 10 allegations challenging the constitutionality of his state court conviction in his original petition and supplemental memorandum.  (ECF Nos. 1, 2).  However, in a supplemental pleading (ECF No. 10) filed several weeks after his original petition, Petitioner raised an additional allegation (Claim 11) arguing that he was denied the right to counsel at his arraignment under Article 15.17 of the Texas Code of Criminal Procedure.  In response, Respondent contends that this allegation is unexhausted and procedurally barred from federal habeas corpus relief because Petitioner did not raise it during his direct appeal or state habeas proceedings.  Respondent is correct.

1.     Exhaustion

Before seeking review in federal court, a habeas corpus petitioner must first present his claims in state court and exhaust all state court remedies through proper adjudication on the merits.  *See* 28 U.S.C. § 2254(b)(1)(A) (stating that habeas corpus relief may not be granted "unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State.").  The exhaustion requirement is satisfied if the substance of the federal habeas claim was presented to the highest state court in a procedurally proper manner.  *Baldwin v. Reese*, 541 U.S. 27, 29-32 (2004); *Moore v. Cain*, 298 F.3d 361, 364 (5th Cir. 2002).  In Texas, the highest state court for criminal matters is the Texas Court of Criminal Appeals, and a prisoner must present the substance of his claims to the Texas Court of Criminal Appeals in either a petition for discretionary review (PDR) or an application for writ of habeas corpus under Texas Code of Criminal Procedure Article 11.07.  *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998); *Bautista v. McCotter,* 793 F.2d 109, 110 (5th Cir. 1986).

26

In the instant case, Petitioner did not file a PDR on direct appeal of his judgment and conviction; thus, for purposes of exhausting his state court remedies, it was necessary that Petitioner present all of the claims presented in this federal proceeding to the state court via the procedure provided in Article 11.07.  While Petitioner did appear to raise all of the allegations from his original petition (Claims 1-10) in his Article 11.07 application to the state trial court, he admittedly failed to raise the instant allegation.  (ECF No. 10 at 2-3).  Because this allegation is being presented for the first time in this federal habeas proceeding, it is unexhausted under § 2254(b).

2.  <u>Procedural Default</u>

Should this Court now require Petitioner to return to state court to satisfy the exhaustion requirement, the Texas Court of Criminal Appeals would find the claim procedurally barred under the abuse of the writ doctrine found in Article 11.07 § 4 of the Texas Code of Criminal Procedure since Petitioner already challenged his conviction in a previous state habeas application.  Because Texas would likely bar another habeas corpus application by Petitioner regarding this conviction, he has committed a procedural default that is sufficient to bar federal habeas corpus review.  *See Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) (finding a procedural default occurs "when a prisoner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.") (citation and internal quotation marks omitted); *see also Bagwell v. Dretke*, 372 F.3d 748, 755-56 (5th Cir. 2004) (holding a petitioner procedurally defaulted by failing to "fairly present" a claim to the state courts in his

27

state habeas corpus application); *Smith v. Cockrell*, 311 F.3d 661, 684 (5th Cir. 2002) (holding unexhausted claims were procedurally barred).

Consequently, Petitioner is precluded from federal habeas relief on Claim 11 unless he can show cause for the default and resulting prejudice, or demonstrate that the Court's failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Busby v. Dretke,* 359 F.3d 708, 718 (5th Cir. 2004). But Petitioner does not argue that cause and prejudice should excuse the default, nor does he demonstrate that the Court's denial of the claims will result in a "fundamental miscarriage of justice." Thus, in addition to the claim being waived by Petitioner's valid guilty plea, circuit precedent compels the denial of Petitioner's unexhausted claim as procedurally defaulted.

## V. <u>Certificate of Appealability</u>

The Court must now determine whether to issue a certificate of appealability (COA). *See* Rule 11(a) of the Rules Governing § 2254 Proceedings; *Miller–El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)). A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court has explained that the showing required under § 2253(c)(2) is straightforward when a district court has rejected a petitioner's constitutional claims on the merits: The petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El*, 537 U.S. at 336 (citation omitted).

The issue becomes somewhat more complicated when the district court denies relief on procedural grounds. *Id*. In that case, the petitioner seeking COA must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Gonzalez v. Thaler*, 565 U.S. 134, 140-41 (2012) (citing *Slack*, 529 U.S. at 484). In other words, a COA should issue if the petitioner *not only* shows that the lower court's procedural ruling is debatable among jurists of reason*,* but also makes a substantial showing of the denial of a constitutional right.

A district court may deny a COA *sua sponte* without requiring further briefing or argument. *See Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000). For the reasons set forth above, the Court concludes that jurists of reason would not debate the conclusion that Petitioner was not entitled to federal habeas relief. As such, a COA will not be issued.

## VI. <u>Conclusion and Order</u>

After careful consideration, the Court concludes that Petitioner's Claim 1 and Claim 2 do not raise cognizable claims for federal habeas relief and that Claim 11 is unexhausted and procedurally barred from federal habeas review. Concerning the remainder of Petitioner's allegations, Petitioner has failed to establish that the state court's rejection of the allegations on the merits during his state habeas corpus proceedings was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the petitioner's state trial, appellate, and habeas corpus proceedings. As a result, Petitioner's federal habeas corpus petition does not warrant federal habeas corpus relief.

29

Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1.      Federal habeas corpus relief is **DENIED** and Petitioner Jakroi Allen Banks's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DISMISSED WITH PREJUDICE**;

2.      No Certificate of Appealability shall issue in this case; and

3.      All other motions, if any, are **DENIED**, and this case is now **CLOSED**.

It is so **ORDERED**.

**SIGNED this the 16th day of January, 2024.**

_____
**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**